IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CT-3218-BO

| | | |
|---|---|---|
| NATHANIEL D. RICE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| OFFICER JOHN DOE, et al., | ) | |
| Defendants. | ) | |

On October 31, 2011, Nathaniel D. Rice ("plaintiff") filed this suit while incarcerated as a federal inmate at the Federal Correctional Institution - Butner II.[1] Compl., D.E.1. This case is voluminous, this litigation has continued for over three years, and Rice has made multiple motions and filings. Mot. to Amend at D.E. 3, and Mot. to Amend at D.E. 30 at 2-8. Remaining before the court is an allegation of excessive force from November 19, 2010, against defendants Highlander, McHenry, Quinn, and Vargas. Order, D.E. 14; Order, D.E 33. These defendants have filed a motion for summary judgment. Mot. for Summ. J., D.E. 58. The court has patiently continued to grant extensions of time for Rice to respond for a second time to the pending motion for summary judgment. See D.E. 69, 71, 75, 78, 82, 83; see also, D.E. 81, Response to Summ. J., 38 pages; 2nd Response, D.E. 85, 41 pages. Rice has responded, and the matter is ripe for determination.

A.  Facts

In November of 2010, plaintiff was designated to the FCI Butner II, and was housed in the institution's Special Housing Unit ("SHU"). On the evening of November 19, 2010, a new cellmate was assigned to plaintiff's SHU cell.[2] Am. Compl., D.E. 30, at 38, ¶ 139; Decl. Highlander, ¶ 9

---

[1]It appears that on September 19, 2014, plaintiff was released from incarceration. See, Docket Sheet and http://www.bop.gov/inmateloc/ (last viewed 2/6/2015).

[2]Rice describes the new cellmate as a "homosexual inmate."

("Highlander Decl."). Shortly after the cellmate was assigned to the cell, the cellmate reported to SHU staff that "being in the cell with plaintiff is creating/causing a problem" and defendants understood the cellmate to allege that plaintiff had physically struck him. See, Am. Compl, ¶ 139; Highlander Decl. ¶ 9. Officers reported the incident to the Lieutenant's Office. Id.; see also Declaration of Javier Vargas, ¶ 6 ("Vargas Decl."). Lieutenant Vargas responded to the SHU, and went to plaintiff's cell door to investigate. Highlander Decl. ¶ 9; Vargas Decl. ¶ 6; see also Am. Complaint at 39, ¶¶ 140-41. Plaintiff's cellmate informed the Lieutenant that plaintiff had slapped him. Highlander Decl. ¶ 9; Vargas Decl. ¶ 6. Lieutenant Vargas then determined that based upon the complaint, plaintiff would be moved to a different cell. Highlander Decl. ¶ 9; Vargas Decl. ¶ 6; see also Am. Compl., at 39 ¶ 141. Plaintiff was instructed to submit to hand restraints, and he did so as instructed. Am. Compl. at 39, ¶ 142; Highlander Decl. ¶ 9; Vargas Decl. ¶ 6.

Once plaintiff was in hand restraints, his cell door was opened, and two Correctional Officers, defendants Highlander and McHenry, attempted to escort him to the SHU's holding cell. Highlander Decl. ¶ 9; Vargas Decl. ¶ 7. Plaintiff states that his "lower extremities gave out" while defendants articulate the action as refusal to walk on his own accord, regardless the officers were forced to physically carry plaintiff to the holding cell. Highlander Decl. ¶ 9; Vargas Decl. ¶ 6. Plaintiff was placed in the temporary holding cell for approximately fifteen minutes, until another cell assignment could be made. Highlander Decl. ¶¶ 10-11; Vargas Decl. ¶ 8; Am. Compl., at 40, ¶ 145. He was then moved to the SHU's "hard cell," cell 167. Highlander Decl. ¶ 11; Vargas Decl. ¶ 8; Am. Compl. at 40, ¶ 145. During the period of time at issue, the FCI Butner II SHU was filled to capacity, and on November 19, 2010, when plaintiff required a new cell assignment, cell 167 was the only available cell assignment. Vargas Decl. ¶ 10. Plaintiff contends that he obeyed the orders

2

during this time, nonetheless he was "assaulted and drug through the SHU." Am. Compl., at 40, ¶ 145. He also contends that cell 167 "was freezing cold, reeked of fecid [sic] odors, was infested with ants/insects, was very unsanitary with bodily fluids/fecids [sic] on the floor, walls, toilet, sink and bed." Am. Compl., p. 40 ¶ 145; see also ¶¶ 146-148. This continued, he alleges, for approximately 3 days and makes a blanket allegation that defendants knew of the sanitation concerns and temperature conditions. Id.

Defendant Vargas readily admits that occasionally some inmates do rub feces on walls; however, he further explains that inmate orderlies, under direct staff supervision, routinely clean the cells prior to new inmates being assigned to the cell. Id. ¶ 12. In the defendants' experiences, no inmate is placed in a cell where a biohazard exists. Id. Both defendants Vargas and Highlander specifically deny that they were aware of any biohazards or insects present in cell 167, at the time plaintiff was assigned to the cell. Id.; Highlander Decl. ¶ 13.

FCI Butner II's Facilities Department is responsible for maintaining the facilities at FCI Butner II, including the heating system. Frazier Decl., ¶¶ 3-5. Requests for repair and maintenance are tracked and maintained on a Facility Work Request form. Id. ¶ 3-4. Heating problems at FCI Butner II are handled by Facilities HVAC staff. Id. ¶¶ 3-5. Only Facilities staff are authorized to repair or make adjustments to HVAC equipment, including thermostats. Id. ¶ 5. A search by Facilities staff of Facility Work Request Records to determine whether the Facilities Department had any record of a problem with the heat in the FCI Butner II SHU during the period of November 19, 2010, through November 23, 2010, revealed one record. Id. ¶ 8. On November 19, 2010, the institution's HVAC staff was notified that a repair was needed to the actuator on the SHU air conditioning unit. Id. ¶ 9. As stated by defendant Vargas, custody staff working in the SHU do not

have the ability to control or adjust the thermostat that controls the temperature in the SHU. Vargas Decl. ¶13.

Plaintiff alleges that as a result of the excessive force used by the defendants, he suffered injuries to his back, knee, feet, ankle, left hip and wrists. Am. Compl. at 42, ¶ 150. He alleges that as a result of the unsanitary cell conditions, he developed skin ailments, hemorrhoids, rashes, bumps, boils, and other skin infections. Id. As a result of the frigid temperatures in cell 167, plaintiff alleges he suffered frostbite and hypothermia, and that his hands, feet, ears, nose, face, toes, fingers, and body began to turn "pale/white and/or reddish" and "blueish/gray and kinda yellowish." Id., ¶ 152. On November 24, 2010, plaintiff spoke with an FCI Butner II nurse practitioner, and complained only of the thickness of the mattress he had been provided, but no other injuries or ailments were noted. See Coll Decl., Attach. 1 at 6. On December 13, 2010, following plaintiff's transfer from FCI Butner II, he arrived at USP Atlanta, where he was evaluated by a medical professional upon his arrival at that institution. Id., Attach. 1 at 16-18. While plaintiff did write on his Health IntakeAssessment/History form that he had "boils, rashes, bumps on buttocks," and hemorrhoids, id., Attach. 1 at 16-17, when the health professional evaluated him, the medical professional found that he did not have any of the alleged injuries. Id., Attach. 1 at 18. When plaintiff arrived at FCI Talladega on December 20, 2010, he received a Health Screen by a nurse at the institution. The nurse specifically noted that plaintiff did not have any draining skin lesions, signs of recent trauma, signs of rash, open sores, wounds or body deformities. Id., Attach. 1 at 10. Additionally, plaintiff was seen at a Chronic Care encounter on December 22, 2010. Id., Attach. 1 at 1-5. At this medical appointment, he reported a history of knee surgery, a deformity of his left ankle, and chronic back

4

problems. Id., Attach. 1 at 1. At no time did he report the injuries alleged to have been inflicted upon him just one month prior. Id.

B.  Discussion

    i.  Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

5

ii. Qualified Immunity

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

iii. Excessive Force

The court first determines whether defendants violated plaintiff's constitutional rights. It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal

6

quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (i) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6.

7

Here, plaintiff has simply failed to demonstrate excessive force, and defendants are entitled to qualified immunity. Plaintiff appears to have had some type of dispute with his cellmate, whether real or imagined by the cellmate. However, the guards and the cellmate clearly felt tension with the cellmate allegations of an assault, and defendants determined it appropriate to moved plaintiff to another cell. By plaintiff's own account, while he complied and submitted to handcuffs, he did not walk on his own accord to the cell to which he was being transferred. While he states he was assaulted, it appears to the court that there are no resulting injuries and while not dispositive of the issue, it is not irrelevant and this does support the courts conclusions.[3] See Wilkens, 130 S. Ct. at 1178.

    iv.    Living Conditions

A prisoner has a clearly established protected right to be free from an excessive risk to health or safety of which a prison official knows or consciously or intentionally disregards. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (internal quotation marks omitted). The first prong requires the court to determine whether the deprivation was objectively sufficiently serious, while the second prong requires the court to determine whether the officials acted with a subjectively sufficiently culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298(1991)). "[D]eliberate indifference entails something more than mere allegation, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that

---

[3] The only issue raised with medical had to do with the mattress thickness and pre-existing and old medical concerns, except for the skin concerns which were found not to be present upon examination.

8

harm will result." Farmer, 511 U.S. at 835. "It requires that a prison official know of and disregard [an] objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995) (citing Farmer, 511 U.S. at 837). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 at 837.

Plaintiff's claim fails, and defendants are cloaked with qualified immunity. While plaintiff clearly has the constitutional protection to be free from an excessive risk to health or safety of which a prison official knows or consciously or intentionally disregards, no knowledge has been shown. Defendants state that while unsanitary conditions can and do exist with the prison unit, every effort is made to clean the cells regularly, and that this is policy. Plaintiff's conclusory allegations that the guards did know, falls short. There is simply no indication from the record that defendants knew of and disregarded a serious human need. No medical injuries were documented contrary to plaintiff's allegations that he suffered from frostbite, hyperthermia, developed skin ailments, hemorrhoids, rashes, bumps, boils, and other skin infections. In fact, no medical injuries were noted by several medical care providers at several different institutions. Defendants are qualifiedly immune given they were not in a position to control or change or fix the heating unit within the prison.

C.  Conclusion

Accordingly, defendants' motion for summary judgment [D.E. 58] is GRANTED, and the matter is DISMISSED in its entirety. Any motion appearing unresolved is DENIED as MOOT [D.E. 82]. The case is CLOSED.

SO ORDERED, this the __12__ day of February 2015.

TERRENCE W. BOYLE
United States District Judge